**SO ORDERED.**

**SIGNED this 29th day of January, 2007.**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
LARRY E. KELLY
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| LAWRENCE RICHARD PAPST, II, § | | CASE NO. 06-30131-LK |
| § | | |
| Debtor. § | | Chapter 7 |
| ------------------------------------------- | | |
| THOMAS M. BOEHM, § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| v. § | | ADV. NO. 06-3026 |
| § | | |
| LAWRENCE RICHARD PAPST, II, § | | |
| § | | |
| Defendant. § | | |

**MEMORANDUM OPINION
REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANT'S "MOTION TO DISMISS"**

The Debtor and Defendant in this adversary proceeding filed a "Motion to Dismiss for Failure to State a Claim" in this action to determine dischargeability of a debt on August 31, 2006, with an attached "Affidavit of Lawrence Richard Papst, II, in Support of Summary Judgment." In light of the stated purpose of the Affidavit and having considered the allegations

of the Motion with the factual allegations made in the Affidavit, out of an abundance of caution the court has treated the Motion as a motion for summary judgment under Fed.R.Bankr.P. 7056, and provided the parties with an opportunity to submit summary judgment evidence and argument on the Motion. *See* Fed.R.Bankr.P. 7012(b), incorporating Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). The Motion will therefore be referred to herein as the "Defendant's Motion for Summary Judgment."

On September 19, 2006, the Plaintiff filed an "Objection to Affidavit of Lawrence Richard Papst, II, in Support of Summary Judgment" and a "Motion for Summary Adjudication and Request for Telephonic Appearance at Hearing Thereon" (the "Plaintiff's Motion for Summary Judgment"), as well as the following papers:

> Separate Statement of Undisputed Material Facts in Support of Motion by Plaintiff for Summary Adjudication
> 
> Memorandum of Points & Authorities (1) in Opposition to Debtor's Motion to Dismiss and for Summary Judgment, and (2) in Support of Plaintiff's Motion for Summary Judgment
> 
> Request for Judicial Notice (1) in Opposition to Debtor's Motion to Dismiss and for Summary Judgment, and (2) in Support of Plaintiff's Motion for Summary Judgment
> 
> Affidavit of Thomas M. Boehm (1) in Opposition to Debtor's Motion for Summary Judgment, and (2) in Support of Plaintiff's Motion for Summary Judgment

Although not specifically titled as such, based on the arguments of the Plaintiff's Motion for Summary Adjudication, the court has also treated it as a motion for summary judgment under Rule 56.

On September 28, 2006, the court entered an order declining to entertain oral argument on the Motions and providing the parties until October 9, 2006, to submit any additional summary judgment evidence and argument. In that order the court specifically directed the

2

parties to address the question of whether the dischargeability of the contempt sanctions award could and should be determined separately from the dischargeability of the original judgment.

On October 5, the Debtor/Defendant filed his "Supplemental Memorandum of Points and Authorities Re Cross Motions for Summary Judgment " and on October 10, 2006,[1] the Plaintiff filed the following papers:

> Second Memorandum of Points & Authorities (1) in Opposition to Debtor's Motion to Dismiss and for Summary Judgment, and (2) in Support of Plaintiff's Motion for Summary Judgment
>
> Second Request for Judicial Notice (1) in Opposition to Debtor's Motion to Dismiss and for Summary Judgment, and (2) in Support of Plaintiff's Motion for Summary Judgment
>
> Second Affidavit of Thomas M. Boehm (1) in Opposition to Debtor's Motion for Summary Judgment, and (2) in Support of Plaintiff's Motion for Summary Judgment

**SUMMARY OF RELIEF REQUESTED**

The court has reviewed the Motions and the other papers listed above, as well as the summary judgment evidence submitted by the parties.

In summary, Plaintiff requests in his Motion that the court enter summary judgment in his favor and against the Defendant, holding that the Defendant is collaterally estopped from contesting–and he is therefore entitled to judgment as a matter of law declaring–that the portion of his unsecured claim against the Defendant that is owed as contempt sanctions is non-dischargeable under 11 U.S.C. § 523(a)(6). In support, Plaintiff offers (among other things) an Order of Contempt (the "Order") entered in the Superior Court of California, County of Santa Clara (the "State Court"), awarding a total of $130,839.00 plus interest thereon (the "Contempt Claim") against the Debtor and in favor of the Plaintiff as sanctions for the Defendant's acts in contempt of various of the State Court's prior orders. Plaintiff argues that the Contempt Claim is a "willful and malicious injury by the debtor to another entity or to the property of another entity" and so non-dischargeable under § 523(a)(6).

---

[1] The deadline of October 9, 2006, was Columbus Day, a holiday on which the court was closed. The filings on October 10th are therefore deemed timely. *See* Fed.R.Bankr.P. 9006(a) (providing that if a period for taking some action falls on such a legal holiday, then the period is extended until the end of the next day).

The Defendant responds that the language of the Contempt Order is insufficient to show that the State Court made the specific findings on the issues relevant to the Plaintiff's § 523(a)(6) claim (willfulness, malice, intent, injury) that are necessary to prove the Contempt Claim non-dischargeable under that section. In the Defendant's response to the Plaintiff's Motion for Summary Judgment (i.e., the Defendant's Supplemental Memorandum of Points and Authorities re Cross Motions for Summary Judgment), as well as his own Motion for Summary Judgment, he argues that the Contempt Claim is dischargeable because there is no evidence, even considering the Contempt Order, that his intent in violating the prior orders of the State Court was to injure the Plaintiff, and because the Plaintiff has not proved, and cannot prove, that the Contempt Claim is compensatory damages for an injury to him or any other entity.

## ANALYSIS

### Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding over which the court has jurisdiction under 28 U.S.C. § 157(b).

### Summary Judgment Standard

Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986).

In deciding whether to grant summary judgment, the court views the evidence in the light most favorable to the party opposing summary judgment and indulges all reasonable inferences in favor of that party. **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 587 (1986); **Allen v. Rapides Parish School Board**, 204 F.3d 619, 621 (5th Cir. 2000). Once a movant has come forward with sufficient evidence to support summary judgment, the burden is on the non-movant to "go beyond the pleadings and designate specific facts in the record showing there is a genuine issue for trial." **Wallace v. Texas Tech University**, 80 F.3d 1042, 1047 (5th Cir. 1996); **Mississippi River Basin Alliance v. Westphal**, 230 F.3d 170, 174 (5th Cir. 2000) (citing **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248-49 (1986)). A fact

question is "material" if it involves "disputes over facts that might effect the outcome of the suit." **Anderson**, 477 U.S. at 248. To meet this burden, the nonmovant must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. **Topalian v. Ehrman**, 954 F.2d 1125, 1132 (5th Cir.), *cert. denied,* 506 U.S. 825 (1992). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." **Brown v. City of Houston**, 337 F.3d 539, 541 (5th Cir. 2003). Additionally, "[g]uesswork and speculation simply cannot serve as a basis" for sending a case to trial. **Brown v. CSC Logic**, 82 F.3d 651, 658 (5th Cir. 1996).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." **Id.** (citing **Celotex,** 477 U.S. at 322, and Fed.R.Civ.P. 56(c)); **River Prod. Co., Inc. v. Baker Hughes Prod. Tools, Inc.**, 98 F.3d 857, 859 (5th Cir. 1996). To the extent facts are undisputed, a court may resolve a case as a matter of law. **Celotex**, 477 U.S. at 323; **Blackwell v. Barton**, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit Court of Appeals has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." **James v. Sadler**, 909 F.2d 834, 837 (5th Cir. 1990) (citing **Matsushita Elec.,** 475 U.S. at 586).

## Undisputed Facts

The following are the relevant facts:

| Date | Event |
|---|---|
| 2/16/1996 | California Judgment entered in favor of Plaintiff, against Debtor/Defendant, for $104,607.88, for attorneys fees and costs for Plaintiff's representation of the Defendant and his corporation, "Phoenix," in litigation in California. |
| 8/23/1996 | order entered by California Court (based on the parties' stipulation) that "the net borrower proceeds from a loan that Phoenix was expecting were assigned in satisfaction of the judgment and the judgment could be satisfied on or before August 30, 1996 by payment of EIGHTY THOUSAND UNITED STATES DOLLARS ($80,000)"; if judgment is not satisfied by $80,000 payment, Defendant is required to deliver responses to Plaintiff's discovery requests by Sept. 9, 1996. |
| 8/26/1996 | order entered by California Court restraining Defendant and his corporation from disposing of a deposit (described in the parties' stipulation as being $230,000 deposited into an attorney client account in connection w/ "the loan"). Within 24 |

5

| | |
|---|---|
| | hours of service of the order, Defendant and his corporation were required to fax Plaintiff information on where that deposit was being held. |
| 8/27/96 | restraining order was served and received by Defendant and his corporation. |
| 8/30/96 | the deadline for Defendant and his corporation to make the payment on the Judgment passes without payment |
| no later than 10/3/96 | [according to the findings in the Contempt Order] Defendant failed to fax the required information, and he and his corporation caused the deposit to be increased to $250,000 and moved to a "brokerage house in Los Angeles." |
| 9/12//96 | order is entered by California Court: |

>   requiring Defendant's corporation to turn over so much of the deposit up as necessary to satisfy the Judgment;
>
>   requiring Defendant and his corporation to provide Plaintiff sworn statement with information on where the deposit was at that time; and
>
>   restraining (again) Defendant and his corporation from transferring or disposing of the deposit.
>
> order is served the same day on the Defendant and his corporation.

| | |
|---|---|
| 10/17/1996 | California Court enters an order (the "Contempt Order") finding the Defendant and his corporation in contempt for violating the August 23, August 26, and September 12 orders, and imposing fines totaling $127,000, and awarding Plaintiff attorneys fees and costs of $3,839.00, and thereby "increasing" the California Judgment by a total of $130,839.00. |
| 11/1/2004 | California Judgment in the amount of $440,038.79 (comprising the original amount and the contempt sanctions increase, plus accrued interest on both) is renewed by Plaintiff. |
| 2/16/2006 | Defendant files Chapter 7 bankruptcy. |
| 7/6/2006 | Plaintiff files this adversary. As of this date, interest of $128,985.45 had accrued on the contempt sanctions portion (plus attorneys fees and costs) of the California Judgment, and continues to accrue thereafter at a per diem rate of $36.34. |

The Debtor for the most part does not dispute these facts, but offers additional facts to explain the relationship of the parties and the background of the original Judgment, and his intent and the motivation behind his default and failure to comply with the California Court's orders. It is undisputed, however, that the California Judgment, including the sanctions imposed

6

under the Contempt Order, was never challenged in that Court after entry, and was never appealed or otherwise directly attacked by the Debtor, and is now final. *See* discussion below regarding the Debtor's right to challenge at this late date the effect of, and the facts as established by, the Contempt Order.

The Plaintiff alleges that the portion of the California Judgment that represents the sanctions ordered under the Contempt Order, the attorneys fees and costs awarded under the Contempt Order, and the interest on those amounts, is non-dischargeable under 11 U.S.C. § 523(a)(6) as a debt for a willful and malicious injury. Both parties expressly agree that the balance of the original California Judgment is dischargeable.

### Required Proof Under Section 523(a)(6)

Section 523(a)(6) provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."

"[N]ondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." **Kawaauhau v. Geiger**, 523 U.S. 57, 61 (1998). The Fifth Circuit Court of Appeals extended **Kawaauhau**'s reasoning in **Miller v. J.D. Abrams Inc. (In re Miller)**, 156 F.3d 598 (5th Cir.1998), and stated that "either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of 'willful . . . injury' in § 523(a)(6)." **In re Keaty**, 397 F.3d 264, 270 (5$^{th}$ Cir. 2005), quoting **Miller** at 603. The Court in **Miller** went on to define the word "malicious" and specifically rejected that it meant an act without just cause or excuse. **Id.** at 605. Instead, the Court defined "malicious" as an act done with the actual intent to cause injury. **Id.** at 606. The Court then noted that this definition is synonymous with the definition of "willful," and therefore aggregated "willful and malicious" into a unitary concept, holding that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." **Id.** at 606; *see also* **Williams v. IBEW Local 520 (In re Williams)**, 337 F.3d 504, 509 (5th Cir. 2003).

Thus, Plaintiff in this case must prove that the Defendant (1) caused an injury (2) to Plaintiff or his property, and (3) either (a) intended that his conduct harm Plaintiff, or (b) intended conduct that was substantially certain to cause harm to Plaintiff. That proof must be by a preponderance of the evidence. **Grogan v. Garner**, 498 U.S. 279 (1991).

7

As his summary judgment evidence on all these elements, the Plaintiff submits the Contempt Order and argues that the elements of 523(a)(6) are established by it as a matter of law under **Williams v. IBEW Local 520 (In re Williams)**, 337 F.3d 504, 509 (5th Cir. 2003), because the Contempt Order establishes that the debt is one for contempt of court for the violation of a court's orders, and the Debtor is collaterally estopped from contesting that. In essence the Plaintiff argues that he need not prove each and every one of the individual elements of a willful and malicious injury, but rather those elements are deemed established because the Contempt Order shows that the Defendant committed contempt by violating court orders–facts that the Debtor is now barred from re-litigating.

As the court understands his pleadings, the Defendant argues that **Williams** does not hold that *all* the elements of § 523(a)(6) are *per se* satisfied by the Contempt Order, but that Plaintiff still must show–and cannot show–that the Contempt Claim was the result of an injury to him or his property. In other words, the Defendant contends, Plaintiff must show and cannot show that the Contempt Claim is compensatory damages for an actual injury of the Plaintiff by the Defendant.

In **Williams**, the Court at the outset characterized the issue it was to decide as "whether the actions of [the debtor] caused willful and malicious injury," indicating that the scope of its decision would include the question of whether a violation of a contempt order should as a matter of law be considered an injury. **Williams**, 337 F.3d at 507 (*emphasis added*).

The Court's analysis of the facts of the case supports that interpretation. It addressed two different amounts the debtor in that case owed to I.B.E.W. Local 520 (the "Union") under a judgment (the "Contempt Judgment"). In the Contempt Judgment, the federal district court had found the debtor in contempt by purposefully and willfully violating an earlier Agreed Judgment the debtor had entered into with the Union. In the Agreed Judgment, the district court had ordered an audit to determine if the debtor had breached a collective bargaining agreement, had ordered the debtor to pay restitution (in an amount to be determined by the audit) if that audit showed he had breached it, and had ordered the debtor to cease the conduct that would breach the collective bargaining agreement. In the later Contempt Judgment, the district court found that the debtor had not paid the restitution it had previously ordered and ordered him to pay a stated sum certain as such restitution. In addition, the district court found in the Contempt Judgment that the debtor had violated the Agreed Judgment's prohibition on further breach, and it liquidated the amount owed as damages for that subsequent breach. The Union argued that

8

both debts were non-dischargeable as willful and malicious injuries because they both arose as a result of the debtor's violations of the Agreed Judgment.

The bankruptcy court had found that the first of those debts was owed for breach of a collective bargaining agreement and not as contempt sanctions for violating the Agreed Judgment, even though the amount of that debt was stated in the Contempt Judgment. The Court of Appeals first held that the mere breach of the collective bargaining agreement was insufficient to show the required intent. The Union then argued its evidence had established the required intent, but the Court disagreed, saying that "[t]here had been no showing of an intentional or substantially certain injury to the Union[,]" which was the party bringing the action under § 523(a)(6). **Id**. at 511 (*emphasis added*). Specifically, *and critical to the issue presented in this case,* the **Williams** Court held that the losses that the Union argued satisfied the required showing of intent under § 523(a)(6) were actually its members' losses or non-union workers' losses, rather than the losses of the Union itself. The Court found these were insufficient to satisfy the required showing of an injury under § 523(a)(6), and therefore reversed the lower courts and held that the Union had failed to show that the first debt was non-dischargeable. **Id.** at 511 ("Williams did know Union electricians would be deprived of employment opportunities and concomitant salaries and benefits if he hired non-union workers for the Eckerd and other commercial projects. Although this injury was substantially certain to occur, it was not inflicted upon the Union.").

In contrast to its finding regarding the first debt, the bankruptcy court had found that the second debt arose under the later Contempt Judgment in which the debtor was found in contempt for violating the Agreed Judgment. Based on that finding, the Court of Appeals affirmed the ruling that this debt was non-dischargeable, holding that a debtor's knowing violation of a court order was *per se* a willful and malicious injury under § 523(a)(6).

The **Williams** Court noted the similarity of the Contempt Judgment it was examining to the order addressed by the Bankruptcy Court in **Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)**, and quoted that Court's rationale extensively in support of its own holding:

> "[W]hen a court of the United States . . . issues an injunction or other protective order telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of that order as is proven in the Bankruptcy Court or, so long as there was a full and fair opportunity to litigate the question of volition and violation, in the issuing court are ipso facto the result of a 'willful and malicious injury.'

9

> "This is because what is 'just' or 'unjust' conduct as between the parties has been defined by the court. . . . An intentional violation of the order is necessarily without 'just cause or excuse' and cannot be viewed as not having the intention to cause the very harm to the protected persons that order was designed to prevent."

**Williams**, 337 F.3d at 512, *quoting* **Buffalo Gyn**, 242 B.R. 229, 238 (Bankr. W.D. N.Y. 1999). This court reads this language, and the analysis by the Court in **Williams** in general, as a conclusion that where there is an order of a court finding a debtor in contempt for violating an earlier court order, for purposes of establishing a willful and malicious injury under § 523(a)(6), it is conclusively presumed or established by that contempt order that (1) the debtor's conduct caused an injury to the other party, and (2) that the sanctions awarded are a "debt . . . for [that] injury . . .." In other words, a debt arising as a result of a violation of a court order does not require proof of an injury beyond showing that the court order was knowingly violated, and neither the existence of an injury nor the amount (or reasonableness) of damages from an injury need be established beyond showing that the court imposed sanctions on the debtor for the violation.

Defendant argues that "recent" cases finding debts arising under contempt orders to be non-dischargeable under § 523(a)(6) all involved compensatory "fines" with some relation to the degree of injury, and that **Williams** should therefore be limited to those types of contempt orders. He distinguishes this case on the grounds that the California Court's Contempt Order contains no finding that the Plaintiff was injured in the amounts awarded, and it was entered only after it was submitted *ex parte* by the Plaintiff with no showing (and no possible showing) of any injury to him or his property.

Nothing in the language of **Williams**, nor any of the other cases cited by Defendant, expressly limits their application to contempt orders that impose sanctions that are intended as, or are comparable to, damages meant to compensate the injured party. Rather, the Court in **Williams** appears to agree with the bankruptcy court that the first debt was distinguishable from the second debt precisely because the latter arose because the debtor "broke his promise to the district court to comply with the [collective bargaining agreement]. The fact that this promise had been made by [the debtor] to the district court and was sanctioned by the Agreed Judgment and Decree elevated the injury to a willful and malicious injury." **Id.** at 511-12. Under California as well as other states' laws, the primary intent of contempt sanctions is to punish or vindicate an affront to the court, not compensate a party. *See generally* Ca.Jur. Contempt § 49 ("acts punishable as contempts are affronts to the courts, rather than to litigants, and involve

penalties of fine and imprisonment, [therefore] a proceeding in contempt is regarded as a case that is criminal or quasi-criminal in nature,"), *citing, among others,* **Crawford v. Workers' Comp. Appeals Board,** 213 Cal.App.3d 156, 259 Cal.Rptr. 414, 419-20 (1989), *cert. denied,* 493 U.S. 1058 (1990) ("Although contempt proceedings are quasi-criminal in nature . . . the purpose of such proceedings is to protect the dignity, authority, or process of the court or tribunal . . . and to provide the court or tribunal with the means of controlling its proceedings.") (citations omitted); *see also* **Ross v. Superior Court**, 19 Cal.3d 899, 913, 569 P.2d 727, 736, 141 Cal.Rptr. 133, 142 (Cal. 1977) ("in California all contempt proceedings are quasi-criminal in nature"). Given this well-established principle regarding the purpose of contempt orders in general, the Debtor's argument that because the Contempt Order in this case imposed fines, not damages, it is somehow distinguishable from **Williams** and the other cases involving contempt orders that he cites, makes little sense.

Further, it is not at all clear that the debt under the Contempt Judgment in **Williams** in fact had any relationship to an injury to the plaintiff in that case. A careful reading of the **Williams** opinion shows that the Court of Appeals did not require evidence of damages to the plaintiff that brings a § 523(a)(6) action based on a debt arising under a contempt order. The opinion shows that the amount of the second, non-dischargeable debt that "was assessed against [the debtor] for failing to abide by the Agreed Judgment," was based on the figure provided by the second "audit [that] revealed Union electricians had been deprived of . . . wages and benefits . . . ." **Williams**, 337 F.3d at 511. Thus, the amount of the second debt was the amount its members lost, and was not related to any injury suffered by the Union itself. Nevertheless, the Court held that it was non-dischargeable because it arose "from the willful and malicious injury [the debtor] inflicted by refusing to obey the Agreed Judgment." **Id.** at 512. In contrast, recall that the Court held that the first debt *was* dischargeable in part because the Union had failed to show injury to itself when the evidence showed only that its members or non-union workers had lost wages and benefits. *See* discussion above, citing **id.** at 511.

Admittedly, the Court did find there was evidence of *some* injury to the Union–"a blow to its prestige and its ability to uphold its contracts." **Id.** However, as discussed above, there was no apparent relationship between that injury and the amount of the second debt as awarded by the district court in the Contempt Judgment. Thus, **Williams** does not seem to require that a plaintiff prove the amount of his or her damages, but rather holds that a prior court's decision in a contempt order on the amount of the sanctions should be considered to be necessarily and *per*

11

*se* the amount of the actual and reasonable damages from the injury. Moreover, given what this court understands to be the reasoning in **Williams**–that a violation of a court's express directive necessarily results in injury and damages and that contempt sanctions are therefore, in essence, "deemed damages"–this court is unwilling to require *additional* proof that the beneficiary of that award of contempt sanctions actually suffered an injury as a result of a debtor's act(s) of contempt. Under this court's interpretation of **Williams**, therefore, it is simply not material whether or not the contempt sanctions in the cases cited by the Debtor had some relation to the creditors' damages in those cases.

The Debtor also argues that the Contempt Order must contain specific findings of his fraudulent intent in violating the California Court's previous orders. He claims that under **Kawaauhau v. Geiger**, 523 U.S. 57, 61 (1998), the Plaintiff must prove the Debtor intended to injure him, and the Contempt Order fails to establish that. This court finds, however, under **Miller v. J.D. Abrams Inc. (In re Miller)**, 156 F.3d 598, 603 (5th Cir.1998), that "either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of 'willful . . . injury' in § 523(a)(6)" and that under **Williams**, a knowing violation of a court order *per se* satisfies the requirement of objective substantial certainty of injury. The court therefore rejects the argument that the Contempt Order must contain specific findings regarding the Debtor's subjective intent (or even that his subjective intent is relevant, at this point), beyond its findings that he had notice of the California Court's previous orders and his obligations under them, and that he willfully failed to obey them. *See* Contempt Order, pp. 9-12.

For all of the foregoing reasons, this court holds that the Plaintiff in this case need not show evidence of injury to him beyond showing that a court order was knowingly violated by the Debtor. If the Plaintiff can show that, according to **Williams**, as a matter of law injury was substantially certain to occur and was willful and malicious. **Id.** ("the Agreed Judgment made [the debtor] substantially certain that his acts would inflict injury"). Plaintiff offers the Contempt Order as the sole evidence of this.

Defendant, while not disputing that he violated the State Court's orders, in essence disputes that the violations were contemptuous, claiming that his conduct was not intentional and/or he had no intent to harm Plaintiff by his conduct. He argues that according to the Contempt Order's own language the State Court did not find that he had the requisite intent to make the Contempt Claim non-dischargeable. The Contempt Order, he says, merely finds that

12

his failure to comply with the Court's orders "was willful." He claims (and the Plaintiff does not dispute) that the Contempt Order, having been drafted and presented *ex parte* to the State Court by the Plaintiff, was entered without any evidentiary hearing and is not supported by any evidence of such intent.

Plaintiff responds that Defendant cannot now raise those arguments because he is barred by collateral estoppel from disputing that there were contemptuous violations of the State Court's orders.[2] Thus, this court must determine on these Motions for Summary Judgment what, if any, preclusive effect should be given the State Court's Contempt Order?

### Should the Contempt Order Be Given *Any* Preclusive Effect?

"[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." **Grogan v. Garner**, 498 U.S. 279, 284 n.11 (1995). "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States ··· as they have by law or usage in the courts of such State . . . from which they are taken.'" **Marrese v. American Academy of Orthopaedic Surgeons**, 470 U.S. 373, 380 (1985), quoting 28 U.S.C. § 1738.

Critical to the outcome of this case is which State's law on collateral estoppel is applied. As the Supreme Court **Marrese** directed:

> This statute [28 U.S.C. § 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."

**Id.**, quoting **Kremer v. Chemical Constr. Corp.**, 456 U.S. 461, 481-82 (1982).

Here, the Contempt Order was entered by a California court; and this court must therefore look to California law on collateral estoppel.

---

[2] In his Objection to Defendant's Affidavit, he requests the court to strike much of the offered testimony that appears to be offered on the issue of the Defendant's reasons for failing to comply with the State Court's orders. Because the court holds that the Defendant is collaterally estopped from relitigating such issues, that testimony has not been considered and the request to strike it will be denied as moot.

13

> "'Traditionally, collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." . . . It is implicit in this three-prong test that only issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine. . . . An issue is actually litigated "[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined. . . ."'"

**Gottlieb v. Kest**, 141 Cal.App.4th 110, 148, 46 Cal.Rptr.3d 7, 33 (Cal.App. 2 Dist., 2006) (*quoting* **People v. Carter,** 36 Cal.4th 1215, 1240, 32 Cal.Rptr.3d 838, 117 P.3d 544 (2005)). Courts also consider whether the party to be estopped had a "full and fair opportunity" to litigate the issue. **Id.** (*citing* **Rodgers v. Sargent Controls & Aerospace**, 136 Cal.App.4th 82, 90, 38 Cal.Rptr.3d 528 (2006)).

There is no dispute in this case that the Contempt Claim was incorporated in a judgment that is now final, and that the Contempt Order is itself a final order. There is also no dispute that the Defendant was a party to that suit. This court has already determined above that, based on **Williams**, "the issues necessarily decided at the previous proceeding are identical to the ones which are sought to be relitigated" in this adversary. Therefore, the only issue presented by the parties in their Motions for Summary Judgment is whether, considering that the Contempt Order was entered *ex parte*, the issues were "actually litigated in the initial action."

<u>Whether the Contempt Claim Was "Actually Litigated"</u>

The Contempt Order was issued by default, and therefore the issue arises as to whether the facts to which Plaintiff seeks to bind the Defendant were in fact "actually litigated" in the California Court.

The law in California differs from the majority of other jurisdictions on this question. In particular,

> [w]hile most states limit the preclusive effect of a default judgment, California, on the other hand, accords collateral estoppel effect to default judgments, at least where the judgment contains an express finding on the allegations. . . . It has also been said: "'[A] default judgment conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment; but such judgment is not conclusive as to any defense or issue which was not raised and is not necessary to uphold the judgment.'"

14

**Gottlieb v. Kest**, 141 Cal.App.4th 110, 149, 46 Cal.Rptr.3d 7, 34 (Cal.App. 2 Dist., 2006) (*citations omitted*).

The "facts necessary to uphold" the Contempt Order are determined by examining what California law on contempt proceedings requires a court to find in order to issue a contempt order.

> It has been held that the elements of contempt for disobedience of a court order, are that (1) the court made a lawful order; (2) the person cited for contempt had knowledge or notice of the order; (3) the person was able to comply with the order; and (4) the person willfully disobeyed the order.

Ca.Jur. Contempt § 23 (2006).[3]

Here, the Contempt Order contains express findings satisfying all the necessary elements of a contempt. For example, in the Contempt Order the California Court found:

> (1) That there had been no compliance with the requirements in the August 23 order to comply with the Plaintiff's discovery requests, and that such failure was "wilful" and "performance of [those requirements] was and remains within the power of [the Defendant and his corporation]." For this contemptuous violation, the California Court imposed sanctions totaling $41,000.
>
> (2) That there had been no compliance with the requirements in the August 26 order to disclose, and such failure was "wilful" and "performance of [the requirement that the Defendant appear for examination in aid of enforcement of judgment] was and remains within the power of [Defendant and his corporation]."
>
> (3) That there had been no compliance with the requirement in the August 26 order to provide information regarding the deposit, and that such failure was "wilful" and "performance of [that requirement] was and remains within the power of [the Defendant and his corporation]" and that such failure "constitutes FIFTY ONE (51) continuous days

---

[3] *Citing* **Application of Ny**, 201 Cal.App.2d 728, 20 Cal.Rptr. 114 (1962); **Application of Liu.** 273 Cal.App.2d 135, 78 Cal.Rptr. 85 (1969); **In re Jones,** 47 Cal.App.3d 879, 120 Cal.Rptr. 914 (1975); **Ramirez v. Superior Court**, 72 Cal.App.3d 351, 140 Cal.Rptr. 108 (1977); **Coursey v. Superior Court**, 194 Cal.App.3d 147, 239 Cal.Rptr. 365 (1987) (disagreed with on the ground that, in the context of a child support order, the legislature has made ability to comply a matter of defense rather than an element, by **In re Feiock**, 215 Cal.App.3d 141, 263 Cal.Rptr. 437 (1989) (disapproved on other grounds by **Moss v. Superior Court** (Ortiz), 17 Cal.4th 396, 71 Cal.Rptr.2d 215, 950 P.2d 59 (1998))); **Conn v. Superior Court**, 196 Cal.App.3d 774, 242 Cal.Rptr. 148 (1987); **Crawford v. Workers' Comp. Appeals Bd.,** 213 Cal.App.3d 156, 259 Cal.Rptr. 414 (1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 868, 107 L.Ed.2d 952 (1990); **Board of Supervisors v. Superior Court**, 33 Cal.App.4th 1724, 39 Cal.Rptr.2d 906 (1995); **In re Cassil**, 37 Cal.App.4th 1081, 44 Cal.Rptr.2d 267 (1995).

of contempt from August 27, 1996 to October 17, 1996." For this contemptuous violation, the California Court imposed sanctions totaling $51,000.

(4) That there had been no compliance with "the ORDER of August 26, 2006 [which included the provisions restraining the disposition of the deposit], and such failure was "wilful." There is no finding in the Contempt Order that this "was and is within [the Defendant's and/or his corporation's] power" and the California imposed no fine for this failure to comply.

(5) That there had been no compliance with the September 12 order's requirements of providing information and restraining disposition of the deposit, and that such failure was "wilful" and "constitutes 35 continuous days of contempt"and "performance [of the requirement to provide the information] was and remains within the power of [the Defendant and his corporation]." For the contemptuous violation of failing to provide the required information, the California Court imposed sanctions totaling $35,000.

The California Court's numerous findings of wilfulness are particularly significant with respect to whether the standards regarding a debtor's intent that are established in **Kawaauhau,** as interpreted in this Circuit by **Miller**, have been met. Under California law,

> the conduct of the accused must have been willful in the sense that his or her conduct was inexcusable. . . . Thus, where the act is the violation of a court order, there must be substantial evidence that the contemner willfully and contemptuously refused to obey the order of the court. . . .
>     Ordinarily, however, a specific wrongful intent is not an essential element of contempt proceedings, and a disavowal of intentional disrespect or wrongful intent is not a defense where a contempt clearly appears from the surrounding circumstances or may be necessarily inferred. . . . The offender must be presumed to have intended the ordinary consequences of his or her own deliberate act. . . . [O]ne with notice of the entry of an order, and having ability to comply with that order, may not defend a contempt charge for disobedience of the order on the ground that no willful disobedience is shown. . . .

Ca.Jur. Contempt § 2 (2006) (*footnotes and citations omitted*).

Therefore, this court finds that the findings in the Contempt Order are sufficient to satisfy all the necessary elements of a contempt and uphold the sanctions imposed under the Contempt Order. The court therefore finds that despite the default nature of the Contempt Order, the Contempt Claim was "actually litigated" in those contempt proceedings, and the Defendant is therefore barred by the Contempt Order from relitigating whether he knowingly and wilfully violated the California Court's orders.

## SUMMARY AND CONCLUSION

Based on the foregoing, this court has determined that the Plaintiffs' Motion for Summary Judgment should be granted, and the Contempt Claim should be declared non-dischargeable under 11 U.S.C. § 523(a)(6), and the Defendant's Motion for Partial Summary Judgment should be denied.

Separate orders to that effect shall be entered.

# # #